UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBIN BARTOLUTTI, an individual,

    Plaintiff,

v.

MICHAEL B. MUKASEY, Attorney General of the United States, in his official capacity,

    Defendant.

Case No. C06-513 - E - RJB

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (REHABILITATION ACT)

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. 36. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

## I.  PROCEDURAL HISTORY

On December 20, 2006, Plaintiff Robin Bartolutti ("Plaintiff") filed a complaint against multiple Defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, *et seq.* ("Title VII"), 5 U.S.C. § 7702(e)(1), and the Fifth and Fourteen Amendments to the United States Constitution. Dkt. 1. On June 18, 2007, Plaintiff filed an Amended Complaint. Dkt. 14. On July 10, 2007, this Court granted a Motion to Dismiss (Dkt. 8) dismissing some of Plaintiff's original claims. *See* Dkt. 23.

ORDER
Page - 1

1          Plaintiff's remaining claims are against Defendant Michael B. Mukasey ("Defendant"), Attorney
2  General of the United States, in his official capacity, based on Title VII of the Civil Rights Act of 1964, as
3  amended, 42 U.S.C. Sections 2000e, *et. seq.* ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C.
4  Sections 701 *et. seq.* ("Rehabilitation Act"). Dkt. 43 at 2. Plaintiff's claims are based upon actions taken
5  by Patrick McDonald, United States Marshal, District of Idaho ("Marshal McDonald"); Chief Deputy
6  United States Marshal Kevin Platts ("Deputy Platts"); and Supervisory Deputy United States Marshal
7  David Meyer ("Deputy Meyer"). Dkt. 36-3, ¶3. These marshals, who were originally named Defendants,
8  were dismissed on the U.S. Attorney's certification that they had acted at all times within the course and
9  scope of their employment. *See* Dkt. 7.

10         On March 13, 2008, Defendant filed a Motion for Summary Judgment. Dkt. 36. On April 9, 2008,
11 Plaintiff filed an opposition. Dkt. 43. On April 21, 2008, Defendant filed a reply. Dkt. 50.

## II.  RELEVANT FACTS

14         Plaintiff worked for the District of Idaho U.S. Marshal's Office ("USMS") from September 1999
15 until March 2005. Dkt. 36-3, ¶7; Dkt. 47, ¶57. Plaintiff was assigned to the Pocatello Sub-Office in
16 September 1999. Affidavit of Robin Bartolutti ("Bartolutti Affd."), Dkt. 48, ¶4. Sometime in 2001 or
17 2002, Plaintiff suffered "what appeared to be a minor shoulder injury." *Id*. ¶12.

18         USMS Deputies are required to take full physical examinations ("FIT tests") every two years. *Id*.
19 ¶13. In October 2002, Plaintiff completed a FIT test. *Id*. Plaintiff claims that, due to her shoulder injury,
20 "the doctor hired by the USMS to conduct the exam restricted [her] from doing the push-ups portion of
21 the FIT test." *Id*.

22         In June 2003, Plaintiff was "diagnosed with a rotator cuff tear which required surgery." *Id*. ¶14.
23 Plaintiff claims that she was restricted from performing aggressive law enforcement, which includes any
24 law enforcement activity that entails a risk of violent confrontation with a prisoner or perpetrator. *Id*.
25 Because of that restriction, Plaintiff was placed on light duty status. *Id*.

26         On November 13, 2003, Plaintiff's orthopaedic surgeon cleared her for full duty, "although [she]
27 would continue to need physical therapy to help strengthen [her] shoulder." *Id*. ¶22. On December 9,
28 2003, Plaintiff had a follow up appointment with her surgeon. *Id*. ¶24. Although Plaintiff claims that her

surgeon told her not to "deliberately stress her arm," she was not "restricted from aggressive law enforcement." *Id*.

On December 10, 2003, Plaintiff claims that Deputy Meyer informed her that she would be required to complete a FIT test and a firearms test on December 19, 2003. *Id*. ¶26. Plaintiff did not take those tests. *Id*. ¶¶27-28. Plaintiff claims that, because of her refusal to take the tests, she was placed on light duty work. *Id*. Plaintiff also claims that she was denied annual leave because she was restricted to light duty work. *Id*. ¶30. On December 16, 2003, Plaintiff returned to her surgeon and received a form explaining that she was restricted from "aggressive law enforcement." *Id*. On December 20, 2003, Plaintiff took her annual leave. *Id*. ¶31.

In early January of 2004, Plaintiff returned to work. *Id*. When Plaintiff returned, Deputy Meyer informed her that she would have to complete the FIT test and the firearms training. *Id*. Plaintiff objected to the push-up portion of the FIT test because her shoulder "had not returned to full strength following the surgery." *Id*. Plaintiff was scheduled to complete these tests on February 18 to 20, 2004. *Id*. ¶34. When she arrived for her FIT test, she objected to doing the push-up portion. *Id*. The deputy administering the test, however, said that she had to complete the entire test. *Id*. Plaintiff relented and claims that "[i]n the course of attempting [her] first pushup, [she] heard a tearing noise and felt pain in [her] shoulder." *Id*. ¶35. Plaintiff did not complete a push-up. *Id*. Plaintiff was subsequently restricted from full duty because she failed the push-up portion of the test. *Id*.

On February 20, 2004, Plaintiff attended a meeting with Chief Platt and "Judy Sullivan of the employee medical programs office at headquarters in Washington." *Id*. ¶36. Plaintiff claims that Ms. Sullivan instructed Chief Platt "that passage of the fit test was not a requirement for being determined fit for duty as a deputy" and, therefore, Plaintiff "was still cleared for full duty." *Id*.

On March 16, 2004, Plaintiff's doctor diagnosed her with a torn rotator cuff and restricted her from "aggressive law enforcement." *Id*. ¶37. In April of 2004, Plaintiff underwent a second rotator cuff surgery. *Id*. ¶38.

Plaintiff claims that she "essentially never worked for the USMS again, except for a few weeks in the Summer and Fall of 2004 on a special project investigating misdemeanor warrants for Ada County." *Id*. In December of 2004, Plaintiff claims that the Marshal's Service and the Office of Worker's

ORDER
Page - 3

Compensation required her to undergo a functional capacity evaluation. *Id*. ¶49. After reviewing the results of that evaluation, Plaintiff's doctor concluded that she had a permanent disability. *Id*.

Plaintiff states as follows:

> My shoulder injury continues to this day to affect my life and my ability to work. It impairs me in lifting my arm above my shoulder, my ability to lift weights with my right arm, my ability to reach above my head, to push with my right arm, and to perform other manual tasks. This limitation on my ability to lift and reach makes it impossible for me to work in any law enforcement job requiring aggressive law enforcement, including guarding prisoners, making arrests, using firearms, and so on. By "aggressive law enforcement" I mean law enforcement activities with a significant risk of violent confrontation with prisoners or perpetrators. . . . My shoulder injury also substantially affects my life in other ways. I am no longer able to engage in recreational activities that I used to enjoy, such as horseback riding, swimming, biking and skiing, and impairs my ability to play tennis. I have difficulty sleeping because I can no longer sleep on my stomach or right side, as I have been used to.

*Id*. ¶50.

### III.  DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the non-moving

party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Moreover, conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

Once the moving party has raised an issue, based on the pleadings, the burden shifted to the nonmoving party to make a sufficient showing on all essential elements of its claim.  *See Celotex Corp. V. Cartrett*, 477 U.S. 317, 323-325 (1985).  In addition, "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

**B.     Rehabilitation Act**

To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability. *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007).  Defendant argues that Plaintiff's Rehabilitation Act claim must be dismissed because "there is no evidence that at the time of the acts complained of, [Plaintiff] was (1) an 'individual with a disability' or (2) a 'qualified individual.'" Dkt. 36-2 at 4.

**1.     An Individual with a Disability**

The Rehabilitation Act defines an "individual with a disability" as one who (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment by the person's employer. 29 U.S.C. § 705(20)(B). The Ninth Circuit looks to the standards applied under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 121 1 et seq., to determine whether a violation of the Rehabilitation Act

ORDER
Page - 5

occurs in the employment context. 29 U.S.C. § 794(d); *Coons v. Secretary of the U.S. Dept. of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

Plaintiff claims that her shoulder injury was a physical impairment that substantially limited her in the major life activity of working. Declaration of Robert C. Grisham ("Grisham Decl."), Ex. C (Plaintiff's Answer to Defendants Interrogatories). Plaintiff also contends that "'working' is not the only major life activity which, if substantially impaired, would bring an individual within the Rehabilitation Act." Dkt. 43 at 6.

Defendant concedes that Plaintiff's shoulder injury constituted a "physical impairment." Dkt. 36-2 at 5. Defendant, however, argues that there is no evidence that Plaintiff's shoulder injury substantially limited her in any relevant major life activity, including "working." *Id*. at 5-10; Dkt. 50 at 2-3.

### a. Substantially Limiting a Major Life Activity

Plaintiff claims that she is substantially impaired in major life activities because her shoulder injury prevents her from "lifting" and "reaching." Bartolutti Affd., ¶50. To be substantially limited in performing manual tasks, so as to be "disabled" under the ADA, an individual "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). In *Williams*, the Supreme court held that "repetitive work with hands and arms extended at or above shoulder levels for extended periods of time" were not manual tasks that were of central importance to plaintiff's daily life. *Id*. at 201. Moreover, the Ninth Circuit has held that lifting restrictions do not constitute a disability for purposes of satisfying the ADA's definition of "disability." *See Thompson v. Holy Family Hosp*., 121 F.3d 537, 540-541 (9th Cir. 1997) (Employee's inability to lift more than 25 pounds on a continuous basis, more than 50 pounds twice a day, or more than 100 pounds once a day is not a "disability" under the ADA).

Defendant has submitted evidence that, based on a functional capacity evaluation, it was recommended that Plaintiff have lifting limitations in her work-related activities. Dkt. 50-18 at 46-53. Plaintiff has not directed the Court to any evidence of more stringent "lifting" or "reaching" restrictions. *See* Dkt 43. Plaintiff merely relies on her own assessment of her injury claiming that "[h]er shoulder injury substantially affects her life" in that "she is limited in recreational activities she previously engaged in, such

as skiing, horseback riding and tennis." Dkt. 43 at 6. This argument is without merit. Plaintiff has provided no authority for the proposition that a disability in those activities supports a claim under the Rehabilitation Act.

Plaintiff also claims that she is substantially impaired in the major life activity of "working" as a U.S. Marshal. Bartolutti Affd., ¶50. This question, however, is not limited to the specific job of U.S. Marshal. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-492 (even assuming that working is a major life activity, a claimant would be required to show an inability to work in a "broad range of jobs," rather than a specific job). Moreover, as stated above, the Ninth Circuit does not consider an employee "disabled" because of an impairment requiring lifting restrictions in the workplace. *See above*. Plaintiff has failed to show that she is "disabled."

Although the Court should grant Defendant's Motion for Summary Judgment based on this issue, Defendant advances an alternative argument for why summary judgment is appropriate.

### 2. Qualified Individual

Defendant argues that Plaintiff has failed to show that she is a "qualified individual" under the Rehabilitation Act. Dkt. 36-2 at 10. A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 1211 l(8). A job's "essential functions" are "fundamental job duties of the employment position. . ., not includ[ing] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(l). If a disabled person cannot perform a job's "essential functions," even with a reasonable accommodation, then the ADA employment protections do not apply. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 989 (9th Cir. 2007).

The plaintiff bears the burden of proving that she is "qualified." *Id*. at 990. Qualification for a position is a two-step inquiry. The court must first examine whether the individual satisfies the "requisite skill, experience, education and other job-related requirements" of the position. The court then considers whether the individual "can perform the essential functions of such position" with or without a reasonable

accommodation. 29 C.F.R. § 1630.2(m); 42 U.S.C. § 12111(8); *see Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135 (9th Cir.2001).

In this case, the parties do not dispute the question of whether Plaintiff satisfies the "requisite skill, experience, education and other job-related requirements." For the second prong of the analysis, Defendant argues that Plaintiff is unable to perform the aggressive law enforcement functions required of a U.S. Marshal. Dkt. 36 at 10. In fact, "Plaintiff does not dispute that, in the final analysis, she was and still is unable to perform these aggressive law enforcement functions." Dkt. 43 at 8. Plaintiff, however argues that "the USMS discriminated against her not by finding her medically disqualified but by denying her the opportunity to perform light duty work which she was qualified for during the periods from December 11, 2003 to January 14, 2004, and March 15, 2004 until she was fired in 2005." *Id*. To support this argument, Plaintiff states the following:

> The USMS was required by 5 C.F.R. § 353.301(d) to "make every effort to restore in the local commuting area ... an individual who has partially recovered from a compensable injury and who is able to return to limited duty. At a minimum, this would mean treating these employees substantially the same as other handicapped individuals under the Rehabilitation Act of 1973, as amended." Pursuant to 5 C.F.R. § 353.102, "*Partially recovered* means an injured employee, though not ready to resume the full range of his or her regular duties, has recovered sufficiently to return to part-time or light duty or to another position with less demanding physical requirements."

*Id*. at 9.

Defendant argues that Title 5 C.F.R.§ 353.102(d) is irrelevant to a Rehabilitation Act claim. Dkt. 50 at 4. Defendant is correct. Plaintiff has failed to provide authority for the proposition that protection under Title 5 C.F.R.§ 353.102(d) qualifies an individual for protection under the Rehabilitation Act. Plaintiff's Title 5 argument fails. Moreover, Plaintiff concedes that she is unable to perform the essential functions of a Deputy U.S. Marshal with or without a reasonable accommodation. Dkt. 43 at 8.

Therefore, Plaintiff has failed to show that she is a "qualified individual" under the Rehabilitation Act. The Court should grant Defendant's Motion for Summary Judgment on this issue.

///

///

///

///

///

IV.  ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 36) is **GRANTED** as to Plaintiff's Rehabilitation Act claim, and that claim is **DISMISSED**.  The Court reserves judgment on the remainder of Defendant's motion.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 25th day of April, 2008.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge